# UNITED STATES DISTRICT COURT
### for the
### Eastern District of California

**FILED**
AUG 21 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
    DEPUTY CLERK

| | |
|---|---|
| United States of America<br>v.<br><br>Gloria Enander Giannini<br><br>*Defendant(s)* | Case No.<br><br>1:19 MJ 00161 SAB |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **June 15, 2016 through January 19, 2017** in the county of **Fresno** in the **Eastern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §1343 | Wire Fraud |
| | Maximum Penalty: 20 years of imprisonment, $250,000 fine, 3 years of supervised release. |

This criminal complaint is based on these facts:

(see attached affidavit)

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Steven Kornaros, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/21/19

_____
*Judge's signature*

City and state: Fresno, California.

Stanley A. Boone, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GLORIA ENANDER GIANNINI<br><br>Defendants | CASE NO.<br><br>AFFIDAVIT OF FBI AGENT STEVEN KORNAROS IN SUPPORT OF COMPLAINT |

### I. EXPERTISE, TRAINING AND EXPERIENCE OF THE AFFIANT

I, Steven Kornaros, being sworn, depose, and state the following:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), where I have been employed for over eight years. As a Special Agent with the FBI, I am currently responsible for investigating allegations of financial crimes and have been assigned to investigate criminal matters, including white collar and civil rights crimes. As an FBI Special Agent, part of my duties and responsibilities include investigating criminal violations related to wire fraud and mail fraud. I have participated in and am familiar with cases involving the investigation of financial crimes and the federal laws related to financial crimes, specifically wire fraud and mail fraud.

2. This affidavit is made to support a complaint charging Gloria Enander GIANNINI with Wire Fraud, in violation of Title 18, United States Code, Section 1343. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other law enforcement; from my review of records and reports relating to the investigation. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint warrant for the above-listed individual, I have not included details of every aspect of the investigation. Facts not set forth herein, are not being relied on in reaching my conclusion that probable cause exists sufficient to charge the individual. Nor do I request that this Court rely on any facts not set forth herein in reviewing this affidavit.

COMPLAINT AFFIDAVIT

## II. PROBABLE CAUSE

### A. Summary of Probable Cause

3. GIANNINI intentionally falsified documents and misrepresented facts regarding an investment opportunity. These falsified documents and misrepresentations were transmitted and/or communicated to victim investors via email, fax and/or telephone. In addition, GIANNINI received and transmitted the victim investors' funds via bank wire transfer, thus being in violation of Title 18, United States Code, Section 1343 - Wire Fraud.

### B. Investigation Backround

4. The FBI Investigation was initiated upon receipt of information given to the FBI by the United States Probation Office (USPO). In December of 2017, USPO discovered that GIANNINI violated her Federal Probation Guidelines prompting a probation search. These searches uncovered evidence of fraud against innocent victims consistent with the pattern of illegal activity that GIANNINI had been previously federally convicted for.

5. From 1986 to the present, GIANNINI has been convicted of repeated violations of numerous state and federal crimes including, but not limited to: Grand Theft, Forgery, Wire Fraud, Bank Larceny, Bank Fraud, Conspiracy to Transport Counterfeit Securities, Failure to Surrender for Service of Sentencing, knowingly writing checks with insufficient funds, and violating the terms of supervised release.

### C. Giannini Solicits Investors, Falsely Telling Them About a Mulit-Million Dollar Inheritance of her Late Husband.

6. On or around June 2016, Clifford Brigham introduced investors Sandra DiFranco and Paul Brown to GIANNINI. Brigham told DiFranco and Brown that GIANNINI needed assistance moving what was purported to be her late husband's $200,000,000.00 inheritance from Spain through Canada into the United States. Brigham indicated that DiFranco and Brown could earn money if they assisted in this effort.

7. On or around June 15, 2016, GIANNINI provided DiFranco and Brown a signed and notarized promissory note detailing the terms, timeframe, and amounts of payment and profit.

According to Brown and DiFranco, the understanding was that they would be providing GIANNINI $42,500.00 each to pay for fees, taxes and/or associated expenses related to the transfer of GIANNINI's inheritance to the United States. In return, DiFranco and Brown were to receive $127,500.00 each within one week's time for their investment.

8. On June 16, 2016, DiFranco and Brown wired a total of $85,000.00 to a Wells Fargo account in Fresno, California controlled by GIANNINI. On June 17, 2016, GIANNINI wired 85,000.00 to *"Assante Furniture LTD"* in Canada.[1] According to GIANNINI, BROWN and DIFRANCO's funds were to be used to pay for fees and/or taxes related to the multi-million dollar money transfer. The original wire information provided to Wells Fargo Bank by GIANNINI stated the following: *"Beneficiary/Recipient Name: Assante Furniture LTD, Purpose of Funds: Payment for Furniture, Additional Instructions: Final Payment per Miss Stevenson"*. Those statements were false, because the payment was not made for furniture.

9. To date, GIANNINI has not paid the agreed interest, nor refunded any funds to DiFranco or Brown.

10. The claimed $200,000,000.00 inheritance did not exist. Originally, the idea of a multimillion-dollar inheritance originated with a fraud scheme targeting GIANNINI's fiancée John Skordoulis. The individuals perpetrating this scheme appear to have been foreign-based. Communicating via email, they indicated to Skordoulis that he was the beneficiary of approximately $314,000,000.00. However, to claim the money, Skordoulis would have to pay taxes and fees. The foreign-based schemers took the "tax and fee" payments and presumably spent them. They then made excuses for why any "tax and fee" payments had been insufficient to secure transmission of the multi-million dollar inheritance.

11. Based on a review of GIANNINI's email, it appears she may have genuinely believed the story told by the foreign-based schemers—that money was available to Skordoulis on payment of fees. But whatever GIANNINI's beliefs about the availability of a sum of money, GIANNINI perpetuated the

---

[1] Prior to receiving DIFRANCO and BROWN's $85,000.00, the account held approximately $3,200.00. Accordingly, the amount GIANNINI wired out the next day appears to consist largely or solely of money from DIFRANCO and BROWN.

scheme by telling a number of falsehoods to Brown, DiFranco, and financial institutions. For example, GIANNINI told DiFranco that she (GIANNINI) was the beneficiary of a $200,000,000.00 inheritance from her late husband Vincenzo Giannini. This made it seem more likely the money existed and was different than what the foreign-based individuals had said. (They had indicated the money belonged to Skoudoulis.) And as indicated above, GIANNINI also represented to Wells Fargo that the money she was transmitting was bound for a furniture store as payment for furniture.

12. The foreign-based schemers had indicated to GIANNINI that she should make the false statements regarding Assante Furniture. Therefore GIANNINI knew that the statements were false at the time she made them and were made to disguise from the banks the true nature and destination of the payment.

**D.  Giannini Obtains Additional Money Based on False Representations**

13. After DiFranco and Brown contributed the $85,000 in June 2016, GIANNINI later indicated that she needed additional funds to pay for taxes in order to transfer her money from overseas in order to pay them. Still trusting that GIANNINI's claims were true, DiFranco and Brown decided to invite their friend Blair Johnson to "invest" with GIANNINI.

14. On September 7, 2016, DiFranco and Brown called Johnson. They told him about an opportunity to make $10,000.00 in 3-4 days based on an investment offer from GIANNINI. DiFranco and Brown indicated that GIANNINI had $200,000,000.00 of inheritance money in Spain and that GIANNINI needed money to pay taxes on it in order to bring it into the United States. JOHNSON was advised that once the funds came into the United States, that he would be paid back his money with $10,000.00 in interest. JOHNSON spoke with GIANNINI who verbally confirmed that she was the beneficiary of a multi-million dollar inheritance that was tied up in Spain and promised to return $40,000.00 to JOHNSON for an initial $30,000.00 investment. As noted above, that statement was false. GIANNINI was not the beneficiary of any such inheritance. Even if she genuinely believed the foreign-based scammers, any existing overseas money belonged to Skordoulis, not her.

15. Based on Giannini's representations, Johnson decided to provide money to GIANNINI. A promissory note signed by GIANNINI on September 7, 2016 obligated GIANNINI to pay Johnson $10,000.00 within four days of receiving his investment of $30,000.00.

16. On September 8, 2016, Johnson wired GIANNINI a total of $30,000.00. On September 9, 2016, GIANNINI wired $28,000.00 of Johnson's money to *"Assante Furniture LTD"* in Canada. It is clear that GIANNINI wired Johnson's funds, as GIANNINI's balance in this Wells Fargo account was $5.42 prior to receiving Johnson's $30,000.00 wire. The original wire information, provided to Wells Fargo Bank by GIANNINI, stated the following: *"Beneficiary Customer: Assante Furniture LTD, Remittance Information: Payoff furniture paid in full per Ms Stevenson"*. Those statements were false and GIANNINI made them to conceal the destination and purpose of the wire.

17. GIANNINI used Johnson's remaining $2,000.00 for personal use in cash withdrawals and transfers. This is clear as she did not receive any additional deposits from any other sources (other than Johnson) as reflected on her Wells Fargo account statement for the month of September 2016. To date, GIANNINI has not paid the agreed interest, nor refunded any funds to JOHNSON.

E. **GIANNINI Provides Falsified Documents to Stymie Attempts to Recover Money**

18. Between June 2016 and December 2017 GIANNINI provided several varying excuses (generally using Claudia Igarik, an associate of Clifford Brigham, as a conduit) as to the constant delays regarding DiFranco, Brown, and Johnson's money. By January 2017, DiFranco, Brown and Johnson were very suspicious of GIANNINI and demanded their money. In response, GIANNINI provided Igarik several documents to forward to DiFranco in an attempt to allay their anger and frustration. These included wire receipts, bank certificates and emails from purported bank associates and the Canadian Revenue Agency.

19. The majority of these documents were falsified and/or altered by GIANNINI. Specifically, GIANNINI had altered the name of two wire recipients and the dollar amounts of the purported inheritance (changed from $314,000,000.00 down to $200,000,000.00). Most notably, GIANNINI falsified copies of the earlier Wells Fargo wire receipts. GIANNINI had originally listed *"Assante Furniture LTD"* as the recipient on both wires. But when she sent the receipts to DiFranco, Brown and Johnson, she changed the recipient name to *"CIBC Imperial Services Clearing House"*. CIBC is a Canadian bank. GIANNINI altered the receipt to make it seem as if a legitimate bank was in possession of the funds. Revealing that the wire receipt actually mentioned a furniture company would have undermined GIANNINI's scheme.

COMPLAINT AFFIDAVIT                        5

20. According to DiFranco, on or around January 19, 2017, DiFranco and GIANNINI spoke via telephone regarding the aforementioned email and documents. GIANNINI asked DiFranco if the documents that GIANNINI had emailed to DiFranco sufficed for her and Brown. DiFranco responded: *"No, this does not make us happy."* GIANNINI responded: *"I know."*

21. Thereafter, GIANNINI continued to solicit Johnson, DiFranco, and others for money related to the supposed "inheritance." For example, in May 2017, following additional solicitations from GIANNINI, Johnson transferred an additional $17,000.00 to GIANNINI. GIANNINI made further efforts to solicit funds from investors through November 2017 (Johnson through September 2017 and DiFranco through November 2017).

### III.   CONCLUSION

22. Based on the above evidence, including victim interviews and evidence derived from lawful search warrants, I believe there is probable cause that GLORIA GIANNINI did knowingly and willfully execute, and attempt to execute, a scheme to financially defraud individuals by means of false or fraudulent pretenses, representations, or promises and communicated and/or transmitted by means of wire, a violation Title 18, United States Code, Section 1343.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Steven Kornaros
Special Agent, Federal Bureau of Investigation

SWORN TO BEFORE ME, AND SUBSCRIBED
IN MY PRESENCE THIS ___ DAY OF
August, 2019.

_____
Hon.
U.S. Magistrate Judge

Approved as to form:
/s/ Michael Tierney
Michael Tierney
Assistant U.S. Attorney

COMPLAINT AFFIDAVIT                                  6